# DR. R. D. EATON CHEMICAL COMPANY, a Corporation, v. J. P. DOHERTY, Ed. Evoy, and Steve Coliton (Ed. Evoy and Steve Coliton, Appellants).

### (153 N. W. 966.)

**Merchandise sold — suit to recover under contract — books of account — value of goods sold — proof of — testimony as to contents of books — not offered in evidence — incompetent.**

Plaintiff sought to recover from the defendants for the value of certain merchandise, which plaintiff claimed to have sold and delivered to the defendant, Doherty, under a written contract, the performance of which was guaranteed by the defendants, Evoy and Coliton. One Collins, an officer of the plaintiff corporation, was permitted to testify, over objection, to his conclusions as to the value and delivery of such goods, based upon alleged entries made against Doherty in plaintiff's books of account. The books were not produced or offered in evidence, although they concededly were in the possession of the plaintiff. It is *held:*

1. That the testimony of Collins as to the contents of such book entries was incompetent, and should have been excluded.

**Refreshing memory — witness — use of books — memoranda — not offered.**

2. That, for the reasons stated in the opinion, such testimony was not admissible on the theory that such books constituted memoranda used by Collins to refresh his recollection.

**Books of account — best evidence of contents.**

3. That the books of account were the best evidence of the contents of the entries made therein.

**Sale and delivery of goods — value — burden of proof.**

4. That the burden of proof was upon the plaintiff to establish the sale and delivery by it to Doherty of the goods for which recovery was sought, and, also, the value thereof.

**Competent evidence — facts — directing verdict.**

5. For the reasons stated in the opinion, it is *held,* that such facts were not proven by any competent evidence, and that the trial court erred in directing verdict in plaintiff's favor.

Opinion filed June 22, 1915.

---

Note.—As a general rule, oral evidence of the contents of books of account is not competent, except upon proper foundation being first laid therefor. For other cases on admissibility of secondary evidence of absent books, see note in 52 L.R.A 604.

From a judgment of the District Court of Bottineau County, *Burr,* J., defendants Evoy and Coliton appeal.

Reversed and remanded.

*Soule & Cooper,* for appellants.

Books of account, kept in the usual course of business, are the best evidence of their contents. In an action to recover for goods sold and delivered, where account of same was properly kept, a witness cannot testify as to such account, and as to the value of the goods, by merely using such books, not in evidence, to refresh his memory. Such evidence is hearsay. Starkie, Ev. (1824) 79, 127; Greenl. Ev. § 98.

*Weeks & Moum,* for respondent.

Oral evidence of persons having personal knowledge of the transactions is the best evidence of the items. The fact that one or both of the parties kept a book account of their transactions does not affect the rule, and such evidence is still primary. The books themselves are secondary or supplementary evidence. Cowdery v. McChesney, 124 Cal. 363, 57 Pac. 221.

Books of account are not the best evidence, so as to render inadmissible oral testimony as to payments credited therein. Christman v. Pearson, 100 Iowa, 634, 69 N. W. 1055.

Where parties are allowed to testify as to all facts for which the books were formally offered, their testimony constitutes primary evidence of such facts, and the books merely secondary evidence. 2 Enc. Ev. 687; Davis v. Field, 56 Vt. 426.

CHRISTIANSON, J. The plaintiff is a Minnesota corporation, whose place of business is located in Minneapolis, Minnesota. It is engaged in the business of manufacturing and selling veterinary and other remedies. On June 3, 1910, the plaintiff entered into a written contract with the defendant, J. P. Doherty, whereby the plaintiff agreed "to fill and deliver on board cars at Minneapolis, Minnesota, his reasonable orders, provided his account is in satisfactory condition, and to charge all goods shipped him under this contract to his account at current wholesale prices." The defendants, Ed. Evoy and Steve Coliton, signed a written guaranty attached to said contract, whereby they jointly and severally guaranteed the performance by said Doherty of said

contract. The plaintiff's complaint sets forth the contract,. and the guaranty in full, and further alleges, "that under and pursuant to said contract, the plaintiff sold and delivered to the said J. P. Doherty, goods and merchandise as described in said contract on the 23d day of June, 1910, at the agreed price of four hundred sixty-six and 10/100ths dollars ($466.10), and on the 2d day of July, 1910, at the agreed price of four hundred twenty-four and 60/100ths dollars ($424.60); and that no part of the same has been paid, except the sum of three and 25/100ths dollars, paid April 15th, 1910, and the sum of five and 55/100ths dollars, paid Nov. 15th, 1911, and the further sum of three hundred forty-one and 55/100ths dollars ($341.55), paid Nov. 30th, 1912, and the further sum of one hundred dollars ($100.00), paid Dec. 17, 1912." The complaint further alleges that the defendant, Doherty, failed to pay for said goods and merchandise, although payment was demanded from the defendants, Coliton and Evoy, and that subsequently the contract with Doherty was canceled by the plaintiff, on account of Doherty's failure to comply with its terms. The defendant, Doherty, defaulted; and the defendants, Evoy and Coliton, answered, specifically denying the sale and delivery to the defendant, Doherty, of the goods and merchandise described in the complaint; and alleging that an additional payment of $400 was made to the plaintiff, on or about November 30, 1912; that at the time the defendants signed the guaranty, the original contract had not been signed by the defendant, Doherty; that they received no consideration for the execution thereof; and that the same was delivered to the plaintiff by Doherty, without the knowledge and consent of the defendants, Coliton and Evoy.

Upon the trial of the action, the plaintiff offered in evidence the written contract and guaranty, and the execution and delivery of such instrument was clearly established. The only testimony offered by the plaintiff to prove a sale and delivery to Doherty by the plaintiff of any goods, and the value thereof, was the testimony of Frank Collins, which was as follows:

Q. What is your name?
A. Frank Collins.
Q. Where do you live?
A. Minneapolis.

Q. Are you an officer of the plaintiff, Dr. Eaton Chemical Company?

A. Yes, sir.

Q. What officer?

A. President and treasurer.

Q. How long have you been connected with the plaintiff as an officer?

A. I was secretary first. I have been with the company nearly four years as an officer.

Q. Do you know whether or not this contract was accepted on behalf of, or by, the plaintiff, Eaton Chemical Company?

A. Yes, sir.

Q. And do you know about the time—the date of the acceptance of it?

A. About June 3d, I think.

Q. About June 3d, 1910?

A. About June 3d, 1910.

Q. Do you know whether the goods were furnished under this contract to the defendant, Doherty, at that time?

A. Yes, sir.

Q. Do you know how much, or at what price?

A. Yes, I have the amounts here, and shipments.

Q. You may state what quantity and what price goods were furnished to this man Doherty.

Mr. Soule: That is objected to as incompetent, irrelevant, and immaterial, and out of the order of proof.

The Court: Overruled.

Mr. Soule: Exception.

A. The amounts?

Q. Yes.

A. On June 23d, 1910, $466.10, and July 2d, 1910, $424.60.

Q. Was that at the regular wholesale price of these goods at that time?

Mr. Soule: Objected to as incompetent, irrelevant, and immaterial; the pleadings having set forth a specific agreed price.

The Court: Overruled.

Mr. Soule: Exception.

A. Yes, a wholesale price.

Cross-examination by Mr. Soule:

Q. How do you know there was $890.70 worth of goods furnished?

A. *Because that was according to our books.*

Q. You don't know anything about it yourself, personally?

A. Oh, yes, I am in the office all the time.

Q. You see the books right along?

A. Yes, sir.

Q. And the knowledge which you have regarding the furnishing of these goods comes from your inspection of the books?

A. Yes, sir, and from seeing the goods shipped out.

Q. You saw these goods shipped, did you?

A. Part of them, not all of them.

Q. What part did you see shipped—what part did you see shipped?

A. Practically all of the first shipment.

Q. Where did you see it?

A. At our place of business in Minneapolis.

Q. Where is that?

A. We were at 709 First avenue, South, then.

Q. Have you got a side track in there from the railway?

A. No, sir.

Mr. Weeks: That is objected to as immaterial and improper cross-examination.

The Court: Overruled.

Mr. Soule: Read the question.

(The last question read to the witness.)

A. No.

By Mr. Soule:

Q. You testified that you only knew about the shipment of part of the goods. What portion of the first shipment did you know about?

A. I don't do all the shipping and packing, but I supervise the business, and know what is going on. I have men to work there.

Q. Well, what portion of that first shipment can you testify positively about?

Mr. Weeks: Objected to as improper and cross-examination, already gone over and immaterial.

The Court: Overruled.

Mr. Weeks: Exception.

A. Why, I superintend the general business, and we have help in shipping; I am positive the goods were all shipped, but I did not handle every box in the shipment, or every package.

Q. Your duties are confined to the postage stamps and envelops, then?

A. No, sir; my business—my duties are confined to the general supervision of that business.

Q. You are willing to testify positively to the shipment of any portion of the first invoice?

A. Why, certainly, I testify that it was all shipped *that we have charged him with.*

Re-direct examination by Mr. Weeks:

Q. Mr. Collins, your company keep a set of books, do they?

A. Yes, sir.

Q. Do they keep an invoice book?

A. Yes.

Q. Do you know whether or not these books—these books or records—are correctly kept?

A. Yes, sir.

Q. Have you recently examined the books with reference to the account against J. P. Doherty, which you have testified to?

A. Yes.

Q. And do you know that that amount is correct?

A. Yes.

Q. *Does that account show the items that you have testified to here as charged to Doherty?*

A. Yes.

Mr. Soule: Objected to, as not the best evidence.

The Court: Sustained.

Mr. Weeks: Exception.

Q. When did you examine these books, Mr. Collins?

A. Oh, I see the books right along, and I have examined them just before I come up here.

Q. Where are those books now?

A. In the safe in Minneapolis.

Q. Was it possible to have these books here?

A. We are using them right along, and keep them in the safe.

Q. Would it be possible, that is, would it be interfering with your business, to take these books away from Minneapolis?

Mr. Soule: Objected to, as incompetent, irrelevant, and immaterial.

The Court: Overruled.

Mr. Soule: Exception.

A. Yes.

Q. Now, outside of your personal knowledge of this transaction, can you refresh your memory from an examination of the books, and state whether or not the statements you have given are correct, as to this account?

A. Yes.

Q. And are they?

A. Yes.

Mr. Soule: Objected to, as incompetent, irrelevant, and immaterial, and not the best evidence; no proper foundation laid.

The Court: Overruled.

Mr. Soule: Exception.

At the close of plaintiff's case, the defendant moved for a dismissal of the action, on the ground that no evidence had been introduced, sufficient to sustain the allegations of the complaint, and sufficient to constitute a cause of action; that it had not been shown that the goods specified in the plaintiff's complaint were sold or delivered to the defendant, Doherty. This motion was denied. At the close of the entire case, plaintiff moved for a directed verdict, which was granted. Judgment was entered pursuant to the verdict, and this appeal is taken from the judgment.

While several errors are alleged, still, the principal question presented on this appeal relates to the sufficiency of the evidence to sustain the verdict. As already stated, the only testimony offered by the plaintiff to prove a delivery to the defendant, Doherty, of any goods, and the amount and value of such goods, consisted solely of the testimony of the witness, Collins. And while he testifies positively that the goods were all furnished, still, it is obvious, from all of his testimony, that his conclusions as to the amount and value of such goods are based upon the books of the plaintiff. It will be observed that the books were

not produced. The original orders transmitted by Doherty were not produced, nor were any of the invoices, as shipping bills for the alleged shipments. There is no testimony on the part of the plaintiff, showing when or to what common carrier the goods were delivered; nor is there any testimony that proper shipping directions were given to the carrier, to forward and deliver the goods to Doherty; nor is there any testimony showing that such shipments were ever delivered to any common carrier, except such presumption of delivery as would arise from the fact that the goods were charged against the defendant, in an account on the books of the plaintiff. The contentions are made on the part of the plaintiff that the witness, Collins, testified from his own personal knowledge as to the sale and delivery of the goods, and that, hence, this testimony was the best evidence, and no necessity existed to produce the books; that the books were merely memoranda of the transactions, of which Collins had personal knowledge, and might be used by him for the purpose of refreshing his memory, and that the only purpose for which Collins used the books under this evidence was to refresh his memory. We do not believe that these contentions are borne out by a fair construction of the evidence. It is true that Collins testifies: "Why, I superintend the general business, and we have help in shipping; I am positive the goods were all shipped, but I did not handle every box in the shipment, or every package." And again: "Why, certainly, I testify that it was all shipped, that we have charged him with." Still, after enumerating the quantities and prices of goods involved in this action, when asked how he knows that there was $890.70 worth of goods furnished, his answer is: "Because that was according to our books." While Collins probably had some personal knowledge, in a general way, of the transactions with Doherty, still, it is obvious from his testimony that, so far as the quantity and value of goods furnished is concerned, Collins bases his testimony entirely on the book entries. Collins does not say that he made the entries, nor is it shown when or by whom they were made. No excuse is offered for the failure to produce the books, except that the books were used right along in the business, and that it would be a matter of inconvenience to bring them up there. The testimony of Collins shows that the books were in existence, and in the possession of the plaintiff.

In this state, the rules governing the admission in evidence of books

of account are prescribed by statute: "Any entries in a book or·other permanent.form, in the usual course of business, contemporaneous with the transactions to which they relate, and as a part of or connected with such transactions, made by persons authorized to make the same, may be received in evidence when shown to have been so made upon the testimony either of the person who made the same, or if he be beyond the reach of a subpœna of the trial court or insane, of any person having custody of the entries and testifying that the same were made by a person or persons authorized to make them in whose handwriting they are, and that they are true and correct to the best of his knowledge and belief. In case such entries are, in the usual course of business, also made in other books and papers as a part of the system of keeping a record of such transactions, it shall not be necessary to produce as witnesses all of the persons subject to subpœna who were engaged in the making of such entries; but before such entries are admitted the court shall be satisfied that they are genuine and in other respects within the provisions of this section." Comp. Laws, § 7909.

In Jones's Commentaries on Evidence, in consideration of the question of the degree of credit to be given to books of account as evidence, it is said: "The courts have frequently expressed the opinion that evidence of this character is quite unsatisfactory, and that it should be subjected to close *scrutiny.* It has been said that books of account are received in evidence, only upon the presumption that no other proof exists. They are justly regarded as the weakest and most suspicious kind of evidence. The admission of them at all is a violation of one of the first principles of the law of evidence, which is, that a party shall not himself make evidence in his own favor. The practice of admitting such evidence is, however, universally adopted. It is said that it had its origin in a kind of 'moral necessity,' and that 'such is the general course of business, that no proof could be furnished of the frequent small transactions between men, without resorting to the entries which they themselves have made in this form of accounts.' But to make them evidence at all, the books must have been kept in a manner so cautious as, in a great degree, to furnish a guaranty against abuse. . . . Books of account of either party, in which charges and entries have been originally made, are admissible in evidence, their credibility to be judged by the jury; but before such books are admis-

sible in evidence, they are to be submitted to the inspection of the trial judge, accompanied with proof that the entries therein were made by the party contemporaneous with the transactions therein recorded, in due course of business; and if they exhibit a fair register of the daily business of the party, and appear to have been honestly and regularly kept, they should be submitted in evidence, to be considered by the jury. . . . In most states, by force of statutes or decisions of the courts, books of account, when kept in compliance with the rules above given, and properly verified, are prima facie evidence of the facts therein stated. The admissibility is, of course, for the court; *the weight of evidence for the jury. It is for them to place the value of the books as evidence, according to the appearance of the entries, the manner of the bookkeeping, the general correctness of the charges, and the innumerable and varying circumstances called into existence by the character of the entry and the particular business transaction submitted to them."* Jones, Ev. § 575.

"As we have stated, the question of *admissibility* or competency is for the *determination of the court,* upon the preliminary proof required by the statute or other law of the forum, while the degree of credit to be given is *for the jury. If the book is not found to be a book of original entries, or if for other reasons it fails to conform to the rules regulating its admission, the court will reject the evidence as incompetent. But if this is left in doubt, the book may be submitted to the jury with the instruction that it should be disregarded, if they find against it.* Book entries are not necessarily excluded because there may be alterations or erasures or mistakes, such as those in the name of the party. These are matters which may be explained to the satisfaction of the court. But if the entries show that they were all made at the same time, though relating to separate transactions, or if by reason of alterations or erasures or other cause they have a suspicious and fraudulent appearance, and are not explained, they should be rejected, although *in some cases it has been held that books of this character should be submitted to the jury under proper instructions."* Jones, Ev. § 576. In this case neither the jury, nor the trial judge, had an opportunity to pass judgment upon the entries in plaintiff's books, but the testimony of Collins as to what was shown thereby was received as conclusive evidence against the defendants.

The law requires a party to produce the best evidence within his power or control. In other words, a moral certainty should exist that the court has had every opportunity for examining and deciding the cause, upon the best evidence which it was within the power or ability of the litigant to produce. United States v. Sutter, 21 How. 170, 16 L. ed. 119. The entries made upon the books of the plaintiff, in this case, furnished the best evidence of such charges. The testimony of Collins, as to the contents of such entries, was therefore inadmissible. 2 Enc. Ev. 688. In considering this question in Great Western Life Assur. Co. v. Shumway, 25 N. D. 268, 271, 141 N. W. 479, this court said: "The bond sued on provides 'that the company's books shall, from time to time, and at all times, be accepted and received, and shall in fact be, as against the agent and sureties, prima facie evidence of the amount of the indebtedness of the agent to the company, and of his accounts, dealings, and transactions with the company, or on its behalf.' The books of the company, therefore, were competent evidence, as against these defendants, of the state of the account between Shumway and the plaintiff, provided a proper foundation was first laid for their introduction. Such books were not offered, however; but instead of so doing, plaintiff sought to prove the vital fact in issue, to wit, that Shumway was indebted to the company, by the deposition of its secretary, wherein such witness, without any foundation being first laid as to his qualifications to thus testify, other than showing that he was secretary of the company, testified to the conclusion that 'the defendant, Shumway, is now indebted to the plaintiff company in the sum of $454.39.' Defendants objected thereto, and moved to strike the testimony out as incompetent, and a mere conclusion, and no foundation having been laid, which objection was sustained, and the motion granted. We think such rulings were clearly correct. The fact that the witness was plaintiff's secretary would not of itself qualify him to thus testify. Furthermore, such testimony was a naked conclusion of the witness; *and, moreover, the record discloses that Shumway's account was kept in books of the company, and therefore such books were manifestly the best evidence of the state of the account.*

"*In the face of the fact that Shumway's account was kept by plaintiff in its books of account, we cannot understand on what possible theory counsel for the appellant can properly contend that the court erred in*

*excluding exhibits C and D, the former purporting to be a mere copy of the company's ledger account with Shumway, and the latter merely a detailed statement of said account, claimed to have been taken from plaintiff's books. Such testimony was clearly incompetent."*

It is contended, however, that the books of account were used by Collins merely as memoranda to refresh his memory, and that his testimony was based upon personal knowledge, and not upon the information given in the books. A consideration of Collins's testimony as a whole shows that this contention is not well founded. While Collins testified that he could refresh his recollection from an examination of the books, yet it is evident from his testimony that he never had any personal knowledge of the second shipment, or of more than a part of the first shipment; so that he had no personal recollection that was refreshed by the book entries, but the information he got from the books, as to the sale and delivery of certain goods at certain prices by plaintiff to Doherty, was rather in the nature of original information. He might have believed that the books had been correctly kept, and that goods of the amount disclosed by the books had been actually shipped; but his only knowledge as to the amount and value of goods so shipped was not dependent upon any former knowledge on his part, but was derived solely from the books. While it is true that there is a tendency to permit the use of memoranda under conditions where this formerly was not permissible, still, it is self-evident that, in order to permit a witness to refer to memoranda for the purpose of refreshing his recollection, it must appear that the witness, at some prior time, had personal knowledge of the facts to which the memoranda relate. A witness cannot be permitted to consult memoranda for the purported purpose of refreshing the recollection, and obtain original knowledge therefrom, and thereafter relate the information thus obtained. The terms "refreshing memory" and "refreshing recollection" are self-explanatory, and directly negative the use of such memoranda, except for the purpose of "refreshing" the recollection of the witness, and recalling to his mind facts, which at one time were personally known to him, but which by reason of lapse of time have in a greater or lesser degree passed out of his mind. It seems obvious, however, that there can be no refreshing of the recollection concerning matters of which the witness never had any actual personal knowledge. It also seems

obvious that such memoranda cannot be used, unless it is shown that the memoranda are competent for the purpose for which they are used.

In a discussion of this subject, it is said, in Elliott on Evidence, § 865: "It is not necessary that the memorandum referred to by the witness should be written by the witness himself, especially where, on seeing it, he has a present recollection of the facts. It may have been written by another, since it is the recollection, and not the memorandum, which is evidence. *It is essential, however, that, upon referring to it, his recollection should be so refreshed that he can speak to the facts from memory; that is, after referring to it he should be able to testify from his own recollection, or that he remembered having seen it when his memory as to the facts was still fresh, and that he remembers that when he saw it he knew the matters therein stated to be correct. For, if the witness is unable to recall the fact or the truth of the fact recorded, and the memorandum was made by another, his evidence, so far as it is established by the memorandum, is objectionable, as mere hearsay, it being his inference from what a third person has written.*"

In the case of Putnam v. United States, 162 U. S. 687, 40 L. ed. 1118, 16 Sup. Ct. Rep. 923, the Supreme Court of the United States, in an opinion by the present Chief Justice White, said: "It is also clear that, where a memorandum or writing is presented to a witness for the purpose of refreshing his memory, it must either have been made by the witness or under his direction, or he must be connected with it in such a way as to make it competent for the purpose for which it is proposed to use it."

It is elementary that the memory of a witness may be refreshed by calling his attention to a proper writing or memorandum. The rule is thus stated by Greenleaf (1 Greenl. Ev. 436):

"Though a witness can testify only to such facts as are within his own knowledge and recollection, yet he is permitted to refresh and assist his memory by the use of a written instrument, memorandum, or entry in a book, and may be compelled to do so if the writing is present in court. It does not seem to be necessary that the writing should have been made by the witness himself, nor that it should be an original writing, provided, after inspecting it, he can speak to the facts from his own recollection. So, also, where the witness recollects that he saw the paper while the facts were fresh in his memory, and remembers

that he then knew that the particulars therein mentioned were correctly stated. And it is not necessary that the writing thus used to refresh the memory should itself be admissible in evidence; for, if inadmissible in itself, as for want of a stamp, it may still be referred to by the witness."

The very essence, however, of the right to thus refresh the memory of the witness is that the matter used for that purpose be contemporaneous with the occurrences as to which the witness is called upon to testify. *Indeed, the rule which allows a witness to refresh his memory by writings or memoranda is founded solely on the reason that the law presupposes that the matters, used for the purpose, were reduced to writing so shortly after the occurrence, when the facts were fresh in the mind of the witness, that he can with safety be allowed to recur to them in order to remove any weakening of memory on his part, which may have supervened from lapse of time.*

In Maxwell v. Wilkinson (Parsons v. Wilkinson) 113 U. S. 656, 658, 28 L. ed. 1037, 1038, 5 Sup. Ct. Rep. 691, speaking through Mr. Justice Gray, the court said: "Memoranda are not competent evidence by reason of having been made in the regular course of business, unless contemporaneous with the transaction to which they relate. Nicholls v. Webb, 8 Wheat. 326, 337, 5 L. ed. 628, 630; Ætna Ins. Co. v. Weide, 9 Wall. 677, 19 L. ed. 810, and Insurance Cos. v. Weide, 14 Wall. 375, 20 L. ed. 894; Chaffee v. United States, 18 Wall. 516, 21 L. ed. 908. It is well settled that memoranda are inadmissible to refresh the memory of a witness, unless reduced to writing at or shortly after the time of the transaction, and while it must have been fresh in his memory. The memorandum must have been 'presently committed to writing,' Lord Holt in Sandwell v. Sandwell, Comb, 445, Holt, 295; 'while the occurrences mentioned in it were recent, and fresh in his recollection,' Lord Ellenborough in Burrough v. Martin, 2 Campb. 112; 'written contemporaneously with the transaction,' Chief Justice Tindal in Steinkeller v. Newton, 9 Car. & P. 313; or 'contemporaneously or nearly so with the facts deposed to,' Chief Justice Wilde (afterwards Lord Chancellor Truro) in Whitfield v. Aland, 2 Car. & K. 1015."

In this case there is nothing to show when the book entries were made, or by whom. There is no contention that they were made by Collins, or under his direction; or that Collins saw the book entries

at the time they were made, or shortly thereafter. It was also incumbent upon the plaintiff to produce such memoranda in court, so that the witness might be properly cross-examined concerning the same. Jones, Ev. § 882; see also Wigmore, Ev. §§ 762, 749. In consideration of this question, in the case of Duncan v. Seeley, 34 Mich. 369, in an opinion written by the distinguished jurist, Judge Cooley, it was said: "The other party had a right to know what the memorandum was on which he relied, and whether it had any legitimate tendency to bring the fact in controversy to mind. It would be a dangerous doctrine which would permit a witness to testify from secret memoranda, in the way which was permitted here. The error was not cured in this case by the plaintiff offering on the next day, on the conclusion of his testimony, to produce the memorandum. The defendant was entitled to see it at the time, in order to test the candor and integrity of the witness; and the opportunity for such a test might be lost by a delay, which an unscrupulous witness might improve by preparing to procure something to exhibit."

The burden of proof was upon the plaintiff, to prove, among other things, a sale and delivery by the plaintiff to Doherty of the goods set forth in the complaint, as well as the value thereof. 11 Enc. Ev. 576.

The only evidence offered to establish these facts, as already stated, was the testimony of Collins, set forth above. It will be observed that even he did not testify to any personal knowledge of the second shipment—the one in issue. He says he saw practically all of the first shipment shipped out; but he made no claim that he saw any part of the second shipment either prepared or delivered for shipment. It is true he stated that he is positive that the goods were all shipped; but this was a mere conclusion, and his answers to specific questions show that he had no actual knowledge as to whether the second shipment was ever sent out. Even Collins did not testify that the goods were delivered to any particular common carrier, nor is any explanation made of the failure to produce the invoices or shipping bills for the shipments. The only evidence, therefore, of the delivery of such goods is the presumption which arises from the fact that they were charged to the defendant, Doherty, upon the plaintiff's books. The only part of the testimony of Mr. Collins which in any manner tended to establish the amount and value of the goods claimed to have been shipped

to the defendant, Doherty, as well as the fact of such delivery, was based upon entries made in the books of the plaintiff; and hence it seems obvious that the books themselves, and not Mr. Collins's statement of the contents of the entries therein, constituted the best evidence. The evidence of Mr. Collins as to the contents of such book entries should have been excluded. And as there was no competent evidence before the court to establish plaintiff's cause of action, it follows that it was error to grant the motion for a directed verdict. The judgment is therefore reversed, and the cause remanded for further proceedings.

Mr. Chief Justice FISK did not participate, COOLEY, District Judge, sitting in his stead.