[File No. 6098.]

BALDWIN PIANO COMPANY, a Corporation, Respondent, v. L. E. WYLIE, Appellant.

and

L. E. WYLIE and M. L. Wylie, Doing Business Individually and Under the Name of Wylie Piano Company, Appellants, v. BALD-WIN PIANO COMPANY, a Corporation, Respondent.

(247 N. W. 397.)

Opinion filed January 14, 1933.   Rehearing March 18, 1933.

*Coffey & Strutz,* for appellants.

*William Langer* and *George W. Thorp,* for respondent.

BURR, J. L. E. Wylie and Marie L. Wylie, under the name of Wylie Piano Company, brought action against the Baldwin Piano Company to recover the sum of $7,945.77 with interest, claiming that during the years 1928–1931 inclusive, they "were engaged in the business of selling, dealing in and handling pianos and musical instruments," for the defendant, the sales being made according to the terms of sales contracts or notes which were sent to the office of the defendant, and the amounts due thereon collected by the defendant; that commissions in the sum of $4,162.27 were earned by them and are due from the defendant; that the defendant authorized plaintiffs to procure sub-agents, and that there is $690 due the plaintiffs thereunder; that the plaintiffs advanced moneys to salesmen of the defendant in the sum of $480; and paid out for advertising and for piano boxes for the defendant $149 and $70 respectively; that the plaintiffs paid to the defendant $900 for credit on the ledger account and the same was never credited; that the plaintiffs were employed by the defendant to effect settlements on goods and agreed to pay the plaintiffs $125 therefor and failed to do so; that plaintiffs made further sales of pianos for the defendant under the aforesaid contract and that there is due and owing the plaintiffs thereon $1,383.50.

The defendant answered denying the claims of the plaintiffs and sets forth a counterclaim where it claims plaintiffs collected approximately $1,500 from sales of pianos and musical instruments belonging to the defendant and failed to remit the same although the amount is due.

At the same time the Baldwin Piano Company commenced an action against L. E. Wylie, individually, asking for an accounting from him as its agent for the sale of pianos and and other musical instruments consigned to him, and in this action L. E. Wylie denied any liability.

By written stipulation between the parties these cases were consolidated and designated as an accounting case, triable to the court, without a jury, under the title of Wylie Piano Company plaintiff against the Baldwin Piano Company and are so considered here.

The court found that under the contract between the parties "there exists in favor of the defendant company a remainder or balance on ledger accounts of sixteen hundred and one dollars and twenty-three cents, also an indebtedness in favor of the company of ten hundred and eighty-seven dollars for pianos sold after termination of the contract;" that plaintiff has a contingent interest and claim against the defendant "for unpaid commissions or equities in the amount of $1,869.96."

The court ordered judgment in favor of the defendant for $1,601.23, as balance due on the ledger account, and $1,087 "for pianos sold after termination of the contract, and for its costs and disbursements herein, and that when the payment on the unpaid commissions on customers' contracts shall be made that they shall be deducted from the amount of the judgment of the defendant against the plaintiff."

The plaintiffs appeal "from the whole of said judgment and the said parties demand a trial de novo in the Supreme Court." This appeal involves principally the determination of facts. The testimony is quite voluminous—the transcript consisting of over six hundred pages of testimony.

L. E. Wylie was in business in New Rockford, handling pianos and other musical instruments manufactured by the Baldwin Piano Company. His brother J. M. Wylie was the manager for the piano company, with headquarters at Fargo. The business arrangements between L. E. Wylie and the piano company at New Rockford were evidenced by a written contract. Later L. E. Wylie and wife moved to Jamestown and continued their business relations with the defendant company.

It is the claim of the plaintiffs that a new and oral contract governed the relations in Jamestown. This is one of the causes of dispute between the parties and the determination thereof is essential to a proper determination of the case. The trial court found that the parties were operating in Jamestown under this written contract. It is true that the sale of pianos and the settlement of special features of business, which arose from time to time, were often consummated by conference, and very frequently these oral agreements became executed so there may have been at times departure from some of the requirements of the written contract. Nevertheless the evidence is such as to sustain the

finding of the trial court that the business relationship was fixed by the written contract.

Under this agreement all of the instruments were to remain the property of the defendant until paid for and to be kept by Wylie for the benefit of the defendant, free from any claim whatsoever. Wylie was to make all sales on contract blanks furnished by the defendant, subject to its approval and acceptance. He was to receive as commission the difference between the price made to him and the price at which the instruments were sold; and this was to be in full payment of all services. No commissions were to be assigned without the consent of the defendant, who had a lien on the commissions for any amount due from Wylie, and these commissions could be credited to Wylie on his indebtedness at the option of the defendant. No commissions drew interest nor was Wylie to receive any portion of interest received on sales. When customers were in default on their contracts Wylie was to repossess the instrument sold at his own expense, upon demand of the company, and if he failed to regain the instrument he was to pay to the company the entire sum due to it on such instrument. In case an instrument was sold and repossessed it could be reconsigned to Wylie "at the original price and under original date" less the amount already received by the company, subject to the conditions of the contract. Wylie was to make no charges for repossessing instruments, nor for collections, nor "for any service which was for our mutual benefit, unless same be agreed upon and authorized in writing previous to the rendering of such service." Where instruments were sold on time, Wylie was to guarantee the payment of the "notes, contracts or leases and renewals on the same," and it was his duty to send to the company on the "first of each month a report of all instruments consigned and unsettled for, in stock and in possession of prospective customers, giving the style and number of each instrument and its location."

On the back of the written contract are "Rules for the Disposition of Instruments," telling the defendant not to make a contract with a minor; to get a first payment in cash; to have the contract or mortgages witnessed if the state law so requires; not to sell any instrument for less than the wholesale price, nor on open account; nor to trade it for merchandise, labor, stock or notes; nor take in any stock, labor, etc., on a sale "where the balance remaining to be paid in money shall be

less than the wholesale price." The back of the contract also has printed thereon the so-called "Installment Sale Terms" showing what should be the first payment, the "regular monthly payments," and the "minimum monthly payments," advising the agent that sales which "do not pay out in thirty-six months cannot be accepted though conforming" to the terms.

Dispute arose between the parties as to the amount which the plaintiffs had remitted, the Wylies claiming lack of proper credits.

The appellant specifies as particular errors the reception in evidence of five "ledger account sheets" and "110 photostatic copies of certain accounts." The trial court received and took these exhibits into consideration in determining the results.

As a basis for the introduction of these exhibits the defendant presented the head of its accounting department who brought with him these "original ledger sheets reflecting accounts" kept by the "company in business relations between the Baldwin Co. and Wylie." He testified he had charge and supervision of the ledger and accounts and of the whole accounting department, but these exhibits were the complete original ledger sheets covering all of the account, both charges and credit; that they were not the original books of entry, but the entries were taken from the cash book, journal, and lease journal. These journals were not produced. The witness showed that the entries were made individually, and that from time to time he supervised and checked over the entries; that he looked over these accounts as stated in the ledger sheets, compared them with the original entries and found them absolutely correct; but nowhere shows the original entries were correct. He admitted the records were not in his own handwriting. Nowhere does he say that any of the entries were made under his direction, nor that they were made by a person authorized to make them in whose handwriting they are, nor does he state that they were contemporaneous with the transaction, nor does he state the original entries were "true and correct to the best of his knowledge and belief." We cannot find any such testimony anywhere in the record and counsel does not cite us to any page or line of the testimony showing any of these important requirements.

They were offered on the theory that they were the "individual ledger account kept in due course of business duly filed by the auditor

and established by his audit as the correct amount as they stand, showing the balance due and the monies paid."

The photostatic copies offered were photographs of the individual accounts of the customers under the Wylie contract. This witness testified these copies were taken under his direction, that he had audited these accounts as far as the balance was concerned and found them correct, and that he compared and fortified these by and with the original books of entry. This is the summary of the bases upon which these copies were offered and received.

While showing these photostatic copies to be true and correct copies of the individual accounts, there is absolutely no proof tendered showing that these individual accounts were made up by any one authorized to do so, that they are correct, that the entries were made contemporaneous with the transactions, in whose handwriting they are, that an employee made them or that they were made under his direction.

The witness was permitted to testify that he had examined all of the other records at the head office in Cincinnati, Ohio, upon which the ledger accounts were based and that he had "the adding up of these figures" done under his direction. Having so testified he was permitted to say that "from that compilation and acting on the face of that ledger account, assuming it to be correct" as he had testified, Lawrence Wylie owed the defendant $1,601.23 on the 27th day of June, 1931, and that this was in addition to the other information that he had disclosed in court.

Section 7909 of the Compiled Laws, which makes provision for the introduction of business records, requires a showing by the person making them or in certain event by the person "having custody of the entries, and testifying that the same were made by a person or persons authorized to make them in whose handwriting they are, and that they are true and correct to the best of his knowledge and belief." The same section requires these entries to be made "in the usual course of business, contemporaneous with the transactions to which they relate and as a part of or connected with such transactions."

It is true that it is not necessary to produce as witnesses all of the persons who made the entries, nor is it necessary for the accountant, or the one in charge of the bookkeeping department, to have made the entries himself, or have seen them made, and it is also true that if the

court is "satisfied that they are genuine and in other respects within the provisions of this section" they may be admitted in evidence. It is said the court was satisfied as to their genuineness, but this is not sufficient. The proof required must be furnished and from this proof the court must "be satisfied that they are genuine and in other respects within the provision of this section." After this proof is furnished the court has the discretion of determining whether he will receive them.

In Dr. R. D. Eaton Chemical Co. v. Doherty, 31 N. D. 175, 153 N. W. 966, the rules governing the introduction of books of account are discussed. It is not necessary to reiterate them here. In the recent case of Wishek v. United States Fidelity & G. Co. 55 N. D. 321, 213 N. W. 488, reference is made to the quantum of proof, and in Spies v. Stang, 56 N. D. 674, 677, 218 N. W. 860, the admission of such records was approved when it was shown that they were "contemporaneous with the transactions to which they relate, and as a part of or connected with such transactions, made by persons authorized to make the same 'and shown to have been so made upon the testimony of the person who made them.' " While in this case cited the testimony was furnished by the person who made the entries, yet it is not necessary always to produce such person. Nevertheless the proof required must be furnished. In Hughes v. Wachter, 61 N. D. 513, 521, 238 N. W. 776, we state the record must show the entries were made contemporaneous with the transaction.

These records are all the defendant offered to prove anything due on the account.

It is true the trial court is presumed to disregard incompetent testimony; but without this incompetent testimony there was no basis for a determination of this issue—no way of arriving at a true accounting.

But appellants' claims rest upon the contract also. Wylie testified that he made many payments to his brother by enclosing the currency in letters and mailing it to him. The brother denies receiving this currency, and the court finds he did not. Even if we were to believe that this money was so paid there is nothing to indicate the company ever received it and there is no proof the brother was authorized to receive payments.

Without the books and records of the company there is no way of

ascertaining what payments had been made to the company, the status of the commission, and the charge account against Wylie. The books and records offered and at times appealed to by plaintiffs Wylie for that purpose did not show these payments in dispute.

Because of the unsatisfactory condition of the records we can not see how we can arrive at a true accounting. Such books are received in evidence because of the exigencies of business. We have heretofore set forth quite fully the terms of the contract in order to show the extreme importance of the books and records of each party. While the practice of admitting them has become almost universal, yet they should be subjected to close scrutiny. Dr. R. D. Eaton Chemical Co. v. Doherty, supra. Appropriate and complete objection to their reception was made. We may feel the books offered are in fact the books of the company, but more proof of the reliability of these ledger sheets should have been forthcoming. Plaintiffs' records are incomplete and unsatisfactory. Both parties rely largely on defendant's record. If the necessary proof of authenticity can be supplied we are in position to determine the financial status of the parties in relation to each other. Therefore the case is remanded to the district court for the taking of such additional testimony regarding the exhibits in dispute as may be available, giving to each party the right to introduce such further testimony as may be desired showing the rights of the parties under the contract in evidence. (See chap. 8, Session Laws of 1919. Bernier v. Preckel, 60 N. D. 547, 236 N. W. 242.) The district court will make findings and conclusions upon the additional testimony taken and certify the same to this court—costs on this appeal to abide the result.

NUESSLE, Ch. J., and CHRISTIANSON, BURKE and BIRDZELL, JJ., concur.

BURR, J. (On petition for rehearing.) Defendants Wylie petition for a rehearing and say the effect of the decision is to "amount to a new trial, all without cost or terms;" that the opinion "sets forth the various eight causes of action in suit" and as to five of these causes of action "there is nothing in the entire record suggesting further evidence could be offered;" that the sixth cause of action has been abandoned; that the "eighth cause of action is established by sales contracts already

in evidence, and admitted to have been received by the Baldwin Company;" and therefore "the first cause of action . . . is the bone of contention between the parties."

By the stipulation the suit brought by the Wylies against the Piano Company is merged in the accounting case and the united case is to be tried as an accounting case. Thus the eight causes of action set forth in the case brought by the Wylies against the Piano Company are part of the case submitted to the court as the court case, and it is necessary to set them forth to understand the issues.

Petitioners cite the case of Kaye v. Taylor, 28 N. D. 293, 148 N. W. 629, as authority for their claim that where the books of account were excluded upon proper objection the fault was the fault of the one who offered the books and on the failure of that litigant to produce competent evidence no new trial was granted. But that case was a jury case and has no application here. Here the books offered were not excluded.

The petition overlooks the fact that this is a court case. By the very terms of the appeal petitioners "request a review of the entire case in the supreme court."

In order to determine this case it is necessary to have the books of the company. The trial court found for the piano company; but in doing so took into consideration evidence against which the petitioners themselves leveled proper objections.

The case at bar is one where this court feels satisfied that in order to determine all issues between the parties it must have evidence that is in existence and which may be produced. The books of the company certainly are material. There is no question but what there are such books of record, and there is a vast difference between failing to offer them and a lack of satisfactory basis for their introduction.

Our examination of the case shows that we cannot determine the whole case without additional testimony. There is enough in the case to show such evidence is available, and it is necessary in order to ascertain how much is due the Wylies upon piano accounts, for collections were made by the piano company and a portion thereof should be credited to the Wylies. Without this testimony the accounting case can not be determined. As the accounting case includes the eight causes of action in the suit brought by the Wylies it is clear the whole

matter could not be determined in what is before us and we remanded the case to the lower court for further testimony.

The case cited in the opinion—Bernier v. Preckel, 60 N. D. 547, 236 N. W. 242—is authority for our action here. There we determined it was necessary to have additional testimony, and while retaining jurisdiction required the trial court to "make new findings of fact and conclusions of law on additional testimony and certify the same to this court." When this was done a decision was rendered as shown in Bernier v. Preckel, 60 N. D. 549, 236 N. W. 243. A similar disposition of the case at bar is deemed by this court to be in the furtherance of justice.

The petitioners say that this "new trial is granted without allowance of costs," and cite the case of Fuller v. Fried, 57 N. D. 824, 224 N. W. 668, and Fischer v. Lebedoff, 62 N. D. 584, 244 N. W. 310, as illustrative of the claim that costs should have been allowed in this case at bar. These were jury cases and the disposition in this court was final, so far as this court was concerned.

Not so in the case at bar. The appeal is still pending in this court. We have required the district court to take "such additional testimony regarding the exhibits in dispute as may be available, etc.," make findings and conclusions upon the additional testimony and certify the same to this court. There is ample time to determine the question of costs when all of the testimony is before us.

The petition for rehearing is denied.

NUESSLE, Ch. J., and CHRISTIANSON, BIRDZELL and BURKE, JJ., concur.