[File No. 6605.]

THE COUNTY OF HETTINGER, a Municipal Corporation of North Dakota, Appellant, v. R. E. TROUSDALE and E. H. Trousdale, Respondents.

(288 N. W. 25.)

Opinion filed September 11, 1939.   Rehearing denied October 26, 1939.

*W. C. Crawford* and *R. J. Bloedau,* for appellant.

*Jacobsen & Murray* and *John F. Sullivan,* for respondents.

MORRIS, J.   This is an action by Hettinger county against the sureties on bonds given to secure deposits of county funds in the closed First National Bank of Mott.   On March 4, 1933, the county had on deposit in this bank the sum of $146,089.72 secured by two depository bonds of $60,000 each executed by the defendants as sureties.   On the above date the bank was closed by Proclamation of the President of the United States.   It was first placed under the control of a conservator. It never reopened for regular business and a receiver was appointed by the Comptroller of the Currency of the United States on April 23, 1934.   In May, 1934, a dividend of 75 per cent was paid to the depositors.   It is undisputed that the county received all of this dividend. The final dividend was paid about July 1, 1935, and shortly thereafter the receivership was closed.   The disputed facts in this case hinge upon the payment of the second and final dividend.   The defendants claim that this dividend was 25 per cent and was actually paid to and received by the county treasurer who receipted therefor.   The county claims that it received only a dividend of 15 per cent and that the defendants are liable upon their depository bonds for the balance of 10 per cent of the deposit which amounts to $14,608.97.   The trial court found for the defendants.   The county appeals and demands a trial de novo.   Records of the receivership submitted at the trial consist of the receiver's certificates upon which are indorsed a first dividend of 75 per cent and a second dividend of 25 per cent; a waiver of all interest that might have accrued in favor of the county since the closing of the bank; receipts showing payment of the first dividend of 75 per cent, and receipts showing payment of "a final dividend of 25 per cent." All receipts were signed by the county treasurer.   In addition to these documents, the record discloses checks of the comptroller of the currency designated "second (final) dividend The First National Bank of Mott, North Dakota" payable to Hettinger county for amounts

'equalling 25 per cent of the county's deposits which checks are indorsed by the county treasurer.

The county contends that despite the showing made by these documents that it actually received but 90 per cent of its deposits and in support of this contention produces trust certificates issued by a depositors' committee consisting of three members, one of whom is the defendant, R. E. Trousdale, which certificates aggregate 10 per cent of the amount of the county's deposits. These certificates recite that Hettinger county is a creditor of the trust created by the liquidation of the First National Bank of Mott and that the certificates are payable out of the liquidation of the assets of the trust. All certificates are dated July 1, 1935.

The county treasurer testified at some length regarding the transaction wherein he surrendered the receiver's certificates of the county, signed receipts for the final dividend of 25 per cent, and indorsed the comptroller's checks. His testimony is that all of this took place in the office of the receiver and that he left all of these instruments lying on the receiver's desk after he signed them.

At the time this transaction took place the receiver's office was in the bank building that had been occupied by the closed institution. This building was then occupied by a new bank known as The First National Bank in Mott, which had purchased a part of the assets of the defunct institution. It was largely with the proceeds of this purchase that the receiver paid the first dividend of 75 per cent. The testimony of the cashier of the new institution, William Mitchell, and the deputy receiver, witnesses for the defendants, differs materially from that of the treasurer as to the manner in which the transactions dealing with the payment of the final dividend were handled. According to the deputy receiver, the county treasurer came to his office on the 29th day of June, 1935, pursuant to a notice given either by mail or by telephone, and surrendered the county's receiver's certificates and signed receipts for the final dividend of 25 per cent. The checks issued by the comptroller for this dividend were turned over to the treasurer who took them and went into the portion of the building occupied by the First National Bank in Mott. Mr. Mitchell testifies that the county treasurer brought the comptroller's dividend checks into the bank and there indorsed them and said that he wanted drafts for three fifths of

the amount and that the other two fifths were to go to the depositors' committee. After the checks were indorsed by the treasurer they were cashed through the ordinary course of banking business. Two fifths of the proceeds were deposited to the credit of the depositors' committee and drafts payable to Hettinger county or to the various funds to which its deposits were allocated, were issued. They were deposited in the Bank of North Dakota. Mr. Mitchell further testifies that after he had completed the deposit slip for the depositors' committee, that the treasurer asked for some trust certificates. It appears that R. E. Trousdale had the trust certificates already made out in an office on the same floor but off from the banking room. Mitchell communicated the county treasurer's request to Trousdale who produced the certificates.

It appears that interested parties had been negotiating for some time for the closing of the receivership. On December 10, 1934, the county commissioners of Hettinger county adopted a resolution approving a plan whereby all depositors of over $100, including the county, would accept a dividend of 15 per cent of their deposits which added to the 75 per cent already paid would make a total payment of 90 per cent for which the creditors would release the bank and the receiver, and that the remaining assets of the bank would be liquidated by a committee who would issue trust certificates or other instruments evidencing the balance of 10 per cent still due the creditors, which resolution contained the following: "It is further provided that this Resolution and release of the bank shall not in any shape, form or manner constitute or operate as a release of any of the sureties of the depository bonds, for the remainder of such deposits."

On December 13, 1934, the defendants signed and consented to this resolution in the following language: "We, the undersigned, sureties on the depository bonds covering deposit of Hettinger County and the County Treasurer of Hettinger County, in the First National Bank of Mott, do hereby consent to that certain Resolution of the Board of County Commissioners of Hettinger County, enacted and passed on the 10th day of December, 1934, pertaining to the liquidation of the First National Bank of Mott, and the discharge of the receiver thereof, copy of which resolution is hereto attached and made a part of this consent."

The defendants contend that the terms of this resolution were never carried out; that its plan was abandoned, and that the agreement has no bearing upon the transactions resulting in the closing of the receivership and the payments to the county, the issuance of the trust certificates, and the discharge of the receiver. On the other hand the county contends that while the plan could not be carried out in detail because the comptroller would not permit the discharge of the receiver upon the showing of a payment of dividends amounting to but 90 per cent while the receiver still held assets of some value; that the transactions which actually took place were for the purpose of arriving at the result sought by the resolution and the waiver of the defendants; that these transactions did not result in the payment of the county's deposits in full and consequently the sureties are still liable for the balance of the deposits which the county has not received, namely, 10 per cent. There can be no question but that the receiver's records show the surrender of the receiver's certificates and the payment of the claims represented thereby in full in two dividends, one of 75 per cent and another of 25 per cent. These payments are evidenced by receipts of the treasurer of Hettinger county and comptroller's checks that were indorsed and cashed by the county treasurer representing the full amount of these dividends. It also appears clear that as to the amounts represented by the final dividend checks of 25 per cent, three fifths thereof were received by Hettinger county in bank drafts which were later cashed by the county; that the remaining two fifths were not deposited to the credit of Hettinger county but were credited to the depositors' committee in the First National Bank in Mott, and the depositors' committee caused to be delivered to the treasurer of Hettinger county the trust certificates evidencing that the county was a creditor of the trust to the extent of the sum so deposited, which is equal to 10 per cent of the county's deposits in the closed bank.

The bonds were conditioned upon the payment of funds deposited by the county with interest. The release of the principal released the sureties unless their liability was continued as a guarantee of the payment to the county of the amounts represented by the trust certificates. Whether such liability actually continued after the settlement with the receiver is the major issue in the case. We are asked to try the case de novo. The evidence is confused and unsatisfactory. Because of

the disordered state of the record we are unable to arrive at a conclusion from the evidence which would lead us with certainty to a just determination of the controversy. In order that the facts may be more clearly established, it is necessary that a new trial be had.

Chapter 208, N. D. Session Laws 1933, dealing with appeals in civil cases tried without a jury, provides that: "The supreme court shall try anew the question of fact specified in the statement or in the entire case, if the appellant demands a retrial of the entire case, and shall finally dispose of the same whenever justice can be done without a new trial, and either affirm or modify the judgment or direct a new judgment to be entered in the district court; the supreme court may, however, if it deem such course necessary to the accomplishment of justice, order a new trial of the action." See also Landis v. Knight, 23 N. D. 450, 137 N. W. 477; Williams County State Bank v. Gallagher, 35 N. D. 24, 159 N. W. 80; Drivdahl v. International Harvester Co. 43 N. D. 284, 174 N. W. 817; King v. Tallmadge, 45 N. D. 531, 178 N. W. 280; Sutherland v. Noggle, 35 N. D. 538, 160 N. W. 1000; McLean v. McLean, 51 N. D. 309, 199 N. W. 872.

This case being clearly one in which the accomplishment of justice requires the taking of further testimony and since such testimony will involve the basic contentions of the parties, a new trial is ordered.

Our statements of evidence in this opinion are set forth for the purpose of showing the state of the record before us and are not necessarily binding upon the parties in the retrial of the case.

Nuessle, Ch. J., and Burke, Burr, and Christianson, JJ., concur.

Morris, J. (on petition for rehearing). The respondents have filed a lengthy petition for rehearing in which they reargue much of the evidence that they contend supports the judgment. They present no points that were not fully considered both with respect to the evidence and the law in the opinion heretofore filed. After giving due consideration to the petition for rehearing, we are all of the opinion that the judgment should not be allowed to stand upon the record here presented, and that there is no point raised upon which a rehearing in this court should be granted.

The respondents also argue in their petition that it is within the

court's discretion to send the case back for the taking of further testimony in addition to that now in the record, without granting a new trial, thus permitting the testimony already taken to stand as a part of the record for further consideration in the case in connection with such new testimony as may be adduced. A majority of this court feels that this point is well taken and that the interests of justice will be subserved by permitting the taking of further testimony without granting a new trial. Bernier v. Preckel, 60 N. D. 547, 236 N. W. 242; Baldwin Piano Co. v. Wylie, 63 N. D. 216, 247 N. W. 397; Holden v. Walker, 63 N. D. 372, 248 N. W. 318. The writer, however, still believes that a new trial should be granted. The view of the majority prevails and the opinion and decision heretofore rendered is modified to the extent that the case is remanded to the district court with instructions to permit additional testimony to be presented on all issues, by both sides, after which the district court will make further findings and cause the additional record to be settled, certified and returned to this court with the record that is now remanded.

It should be noted also that the respondents state in the petition for rehearing that no demand for a trial de novo appears in the settled statement of the case. The respondents are entirely in error on this point. The record shows that attorneys for respondents stipulated as to the contents of the statement of the case to be settled by the court, which stipulation specifically includes, among other papers listed, "Demand for trial de novo." The order of the court settling the statement of the case also refers to and includes this same instrument. A rehearing is denied. Costs will abide the event.

NUESSLE, Ch. J., and BURKE, BURR, and CHRISTIANSON, JJ., concur.