EDLA H. FYTEN, Respondent, v. A. J. CUMMINS and C. M. English, Appellants.

(203 N. W. 178.)

**Contracts — vendor and purchaser — evidence held sufficient to sustain finding as to amount of indebtedness of purchaser to vendor; also to support finding that purchaser abandoned contract and relinquished possession of land; no binding contract by vendor to pay money to procure relinquishment of claims of purchaser when withdrawn.**

1. In an action brought by the vendor, who had resumed possession of the land sold, to have the contract canceled as a cloud upon the title, the evidence is examined and it is held to support the findings of the trial court to the effect

(a) That the purchaser, while in possession, had committed various breaches of the contract.

(b) That the purchaser had become indebted to the seller in the amount of $6,113.55.

(c) That the purchaser had abandoned the contract and relinquished possession of the land.

(d) That no binding contract had come into existence between the vendor of the land and an assignee of the purchaser, whereby the former would pay to the latter a sum of money to procure the relinquishment of the claims of the purchaser under the contract.

**Vendor and purchaser in absence of findings as to value of purchaser's equity, personal judgment in addition to judgment quieting title in vendor not supported.**

2. Where a contract for the sale of land contains no provision purporting to fix as liquidated damages the amount of any payments made or owing upon a purchase contract at the time of cancellation for breach, and where there is no finding as to the value of the purchaser's equity at the time of cancellation, the findings will not support a personal judgment for the amount owing in addition to the judgment quieting title in the vendor.

Opinion filed March 11, 1925.   Rehearing denied March 30, 1925.

Quieting Title, 32 Cyc. p. 1322 n. 9.   Vendor and Purchaser, 39 Cyc. p. 1354 n. 19; p. 1398 n. 15; p. 1399 n. 24 New; p. 1612 n. 98, 19.

Appeal from the District Court of Grand Forks County, *Cooley, J.* Modified and affirmed.

*W. J. Mayer,* for appellants.

*H. A. Libby,* for respondent.

BIRDZELL, J.   This is an appeal from a judgment quieting title in the plaintiff to certain lands and awarding a recovery of $6,113.55 and costs as a personal judgment against the defendant A. J. Cummins.

The plaintiff Edla H. Fyten was the owner of a section of land near Niagara in Grand Forks county.   In October, 1918 she entered into a contract for the sale of the land to the defendant A. J. Cummins for a consideration of $35,200.00, payable as follows: "The equal one-half of all grains and produce raised upon and from said farm each and every year until the whole amount thereof is paid, with interest on all deferred payments running from this date at the rate of 7 per cent per annum."   It was further provided that Cummins should assume, as a part of the purchase price, a mortgage of $7200.00.   No

cash or other payment was made at the time the contract was entered into. The contract provided for the doing of the threshing each year on or before October 15th and for an annual adjustment on the latter date, at which time the grain and produce should be divided and applied, first, to the payment of interest on the unpaid purchase price, and, second, to the principal, and it further provided that until division and sale the grains and salable produce should be put into an elevator at Niagara under the direction of the seller and be stored in her name and sold by her on or before October 15th. It was agreed that the purchaser should pay all taxes and assessments, work out road taxes, keep buildings insured for the benefit of the seller in amounts of at least $5,000.00 or outbuildings and $3,000.00 on the dwelling house. The purchaser was to furnish seed, tools and machinery and operate the farm, keeping down foul weeds and keeping the buildings in repair at his own expense. The purchaser was to haul out and properly spread accumulated manure, to keep in good repair a certain electric light plant and hot water plant, and to plant each of the first two years not to exceed fifty acres of potatoes upon the parts of the lands that would be most benefited thereby, and after the annual adjustment and the payment of the amount due each year the title and possession of the potatoes to rest in the purchaser. The seller reserved the right to perform the purchaser's covenants upon the failure of the latter to do so, charging the purchaser with the actual costs, payable out of the purchaser's share of the crops. The purchaser covenanted not to encumber the lands or the crops without the written consent of the first party. He purchased certain quantities of seed for an agreed consideration of $1,842.00, which amount with 10 per cent interest he agreed to pay the seller on October 15, 1919 out of his half of the grains, and in the event the yields were less than a stated amount, he was to pay less and the seller was to carry the balance over at the same rate of interest. The purchaser went into possession under the above contract in the fall of 1918. The contract was filed for record in the office of the register of deeds on October 19, 1918, and on September 25, 1919 the parties agreed to a further stipulation that the contract should be personal and that the land should not be rented or the contract sold or assigned without the written consent of the seller. This stipulation was attached to a copy or duplicate original contract and

executed by the parties but not filed for record until September 17, 1920.

During the period of Cummins' occupancy of the premises under the above contract, he failed to keep certain of the covenants therein contained. The evidence in this respect shows in general the following: That while he raised a good crop in the year 1919 and made substantial payments on his contract, he raised poorer crops in 1920 and 1921 and permitted the land to deteriorate through improper cultivation and lack of attention to the eradication of noxious weeds; he permitted the buildings to become in a state of disrepair and inflicted damages upon the house and outbuildings; he permitted the heating plant in the house to become damaged and put the electric light plant out of commission; he permitted the fences to become more or less dilapidated and he used certain parts of the premises in the operation of an illicit still for making moonshine for his own use and for sale. Owing to this general situation, the seller was desirous of canceling the contract and resuming possession of the premises, and during the seasons of 1920 and 1921 she negotiated with the purchaser with this end in view.

These negotiations were somewhat complicated by the fact that the purchaser had become indebted to the firm of English & Pickard and to the Security State Bank, both of Niagara, and had assigned his purchase contract to Chas. M. English as security for the indebtedness so owing. By reason of this assignment, English became interested in the negotiations between Mrs. Fyten and Cummins, looking toward the cancellation of the contract and the resumption of possession by the former. In a letter written by English to the attorney for the seller, dated in November, 1920, he stated his interest in collecting the indebtedness owing by Cummins to himself, to English & Pickard and the Security Bank and volunteering his assistance in making a settlement between Mrs. Fyten and Cummins on condition that his interests were protected. He suggested assigning to Mrs. Fyten his assignment from Cummins. It seems that the indebtedness for which the English assignment was made was also secured by a chattel mortgage on certain live stock and machinery. Cummins remained on the farm during the season of 1921 and the plaintiff's continuing desire to cancel the contract led to further negotiations, some of which were

carried on through her attorney and an attorney representing English. As a result of these negotiations an agreement was substantially reached between the attorneys whereby Mrs. Fyten would pay $1,300.00 to English and pay certain expenses incurred in raising the 1921 crop, and the latter would procure a quitclaim deed from Cummins and wife and cause the latter to remove from the farm, leaving the 1921 crop for Mrs. Fyten. This proposition was submitted to the plaintiff at her home in Minneapolis by her attorney, but almost immediately afterward and before the arrangement was carried out, the plaintiff learned that Cummins and wife had removed from the farm several days previously, whereupon she immediately took steps to revoke the authority of her attorney to settle on the basis indicated and to resume possession of the farm. Such possession being resumed, she began this suit to cancel the contract and remove it as a cloud upon her title.

The court below made findings of fact to the effect that the defendant Cummins had broken his contract in the respects indicated in the above statement and further found that the defendant English had never at any time taken possession of the premises under his assignment and that no contract of settlement had in fact been made between the plaintiff and the defendant English; that the defendant Cummins had voluntarily quit and removed from the premises and at the time of his removal was indebted to the plaintiff in the sum of $6,113.55, which sum was "equal to or in excess of the amount of any equity" that the defendant had in the land at any time during the life of the contract. Upon these findings the court made conclusions of law to the effect that the plaintiff was entitled to the cancellation of the contract as against Cummins and to the cancellation of the assignment to the defendant English; that she was entitled to a personal judgment of $6,113.55, "being the amount still due and owing to her" by Cummins under the contract; and that the defendant English was not entitled to any money judgment against the plaintiff. There are further conclusions supporting the plaintiff's absolute ownership in fee, after which Cummins is granted the right to redeem and to have his contract re-instated by the payment of the full amount of the judgment and interest and costs within ninety days, and in the event of his failure judgment to be entered agreeable to the findings and conclusions. Thereafter, at the expiration of the ninety-day period, final judgment

was entered pursuant to the findings and conclusions, including a personal judgment for $6,113.55 with interest.   From this judgment the defendants have appealed.   The appellants demand a trial de novo in this court and, in addition, specify various particulars in which they claim the findings are not supported by the evidence and in which the lower court erred in its conclusions of law as embodied in the judgment.

It is impracticable, in the course of an opinion confined to limits that would be within the bounds of reason, to discuss in detail the evidence contained in a transcript of some four hundred pages and bearing upon the various facts found by the trial court.   A careful reading of the transcript convinces us that it is unnecessary to review the evidence.   The defendant Cummins did not testify, and the evidence of the witnesses who testified concerning the operation of the farm during his occupancy abundantly supports the findings of the trial court with reference to the various particulars in which it was found that Cummins had broken his contract.   We are of the opinion that the merits of this appeal are to be found in certain contentions of the defendants concerning the rights resting in the contract and its assignment, arising upon the breaches which were found by the trial court.

It is first contended that, inasmuch as there was no forfeiture clause in the contract, no forfeiture could be declared by either the plaintiff or the court.   We are of the opinion that the right of the plaintiff to have the contract cancelled upon proof of the breaches of the contract and abandonment of the premises, such as were shown in this case, is not dependent upon the presence or absence of a "forfeiture" clause in the contract.   The provisions of the contract in this case make it perfectly clear that the plaintiff was selling her land to the defendant Cummins wholly on credit and was divesting herself of possession to enable him to pay the purchase price through the use of the property. The property, of course, stood as security and the contract contained numerous stipulations looking to the protection of this security during the time it should be in the possession of the purchaser.   While it is elementary that a contract of this character places the equitable ownership of the property in the purchaser, it is equally elementary that the perpetuity of the equitable interest is dependent upon the good faith efforts of the purchaser in the fulfillment of his contract, and where,

as here, the contract has been so far disregarded by the purchaser as to disappoint every reasonable expectation on the part of the vendor of ever realizing the benefit of the purchaser's performance, there is little left for a court of equity to do except to determine the equitable interests of the parties and make appropriate provision for their protection. If equitable provision is made, obviously no forfeiture is involved. And where the breaches of contract are gross and the benefit of future performance is claimed by the purchaser or his assignee, it is incumbent upon the one asserting the claim to do equity. Nelson v. McCue, 37 N. D. 183, 163 N. W. 724.

In the instant case the appellants contend that the defendant Cummins was not in default, by this contention, apparently, meaning to assert that he had not failed to turn over one-half the crops raised each year. It is true that the contract does not fix definitely the amounts to be paid from time to time, nor does it fix the ultimate maturity of the entire consideration; but, in view of this fact, unusual importance necessarily attaches to the other provisions of the contract respecting the farming of the land in a husband-like manner and the upkeep of the premises. Even more significant is the provision for possession. Manifestly, the entire hope of receiving the purchase price through the operation of this contract would be frustrated by a deliberate abandonment of the premises which would render the purchaser unable to raise the crops to be applied in payment and which would subject the property to hazards incident to abandonment and vacancy. Hence, if the finding of the trial court of voluntary abandonment by the purchaser be sustained, there can be no merit in the contention that the judgment of cancellation was not warranted. It must be noted that the defendant Cummins never testified at all. The plaintiff testified, in substance, that she learned through neighbors that Cummins had abandoned the farm and moved to his house in the village of Niagara, whereupon she went to the farm and took possession several days afterward, finding that it had been vacated. English testified that he had taken the assignment to protect the indebtedness and that he expected to carry out the contract if Mr. Cummins fell down, but that he expected Cummins would continue the contract and pay up for the place, and that from harvest time down to the time Cummins left the farm he was staying there at his (English's) re-

quest. When asked specifically, however, "Were you ever willing to take over that contract and comply with its terms whenever Mr. Cummins fell down and could go no further," he answered "No." Concerning Cummins' actual moving from the farm, he testified to his participation, in substance, as follows: That Cummins owned a house in town and he (English) asked the renter to move out so he (Cummins) could move in; that Cummins had asked him to do this and that that was all he had done. The testimony as a whole leaves little room to doubt that English had encouraged Cummins to remain on the farm until the fall of 1921 in the hope of realizing something on the indebtedness to secure which Cummins had assigned the contract to him and that as that season closed Cummins himself decided to remove from the farm. English, in this situation, was not willing to go on and assume the burdens of Cummins' contract with Mrs. Fyten. However unfortunate the resulting situation from the standpoint of English, who had advanced considerable money to Cummins apparently on the strength of his farming operations, we, nevertheless, think that the evidence shows both a voluntary abandonment by Cummins and an unwillingness on the part of the assignee to step into the breach. Hence, we are of the opinion that the fee owner upon resuming possession had a right to have the contract removed as a cloud upon her title, and the absence from the contract of any express provision for forfeiture or for resumption of possession does not affect her equitable right in this respect under the facts here disclosed.

With respect to the contract, which the appellant claims was made, whereby English was to procure the relinquishment of Cummins' contract rights upon certain terms and which provided for the payment of $1,300.00 by Mrs. Fyten to English, the record shows that Mrs. Fyten's assent to this arrangement was given without knowledge, either on her part or on the part of her attorney, that Cummins had in fact abandoned her premises. It further shows that her assent to this arrangement was prompted by a desire to avoid such litigation as would be necessary to secure the cancellation of the contract on the supposition that Cummins would continue to assert rights thereunder. In this view of the matter, we are of the opinion that she was legally justified in a prompt rescission of the settlement contract or

offer upon ascertaining the facts and that the evidence fully warrants the findings of the trial court in this respect.

The appellants urge that the judgment does not properly reflect the state of the accounts between Cummins and Mrs. Fyten. These contentions seem to be based principally upon the proposition that the contract contains no provision that advancements made to the vendee from time to time should be regarded as a part of the consideration and be protected by the lien of the vendor. It is argued, in this connection, that any such advancements as were made were made on the personal credit of Cummins and that the vendor, in the settlements had from time to time, was bound to apply Cummins' share of the crops to the reduction of the lien or purchase price obligation. It is true, as contended, that the contract does not contain the usual provision for securing the advancements, but it does contain a provision that in case of the failure of the purchaser to perform his obligations in a timely and proper manner, the seller shall have the right to perform such obligations or to procure the same to be done and charge the purchaser with the costs, and that reimbursement will be made on the date of their yearly adjustment, which reimbursement may be from that portion of the crop eventually belonging to the purchaser. While this provision may not be sufficiently broad to give a lien for all advancements, it does express the right of the vendor to defray the expense of having the land farmed in a proper manner under the contract, in case the purchaser does not do so, and to be reimbursed out of the purchaser's share of the crop. In addition to this, the evidence shows that Cummins and Mrs. Fyten had come to an adjustment of their accounts in the fall of 1920, according to which Cummins owed her $6541.24. This account was approved by Cummins. It contains large items of taxes, insurance and labor, also large items for grain apparently furnished for seed purposes subsequent to 1918. The amount received by Mrs. Fyten the following year, as proceeds of the crop, was insufficient to pay the interest on the unpaid purchase price. Besides this there was a further charge against the property of over $900.00 for another year's taxes. While it would be a difficult task to accurately adjust the accounts of the parties to this contract, using the record here as a basis, we are satisfied from a careful examination of the testimony and the exhibits that Cummins was indebted to Mrs. Fyten

in the fall of 1921 in an amount greater than the amount stated in the findings. In this state of the record and in view of the further testimony showing the injury done to the premises during Cummins' occupancy, the abandonment of the premises by him, and the avowed unwillingness of his assignee to proceed with the contract, we think there is no equity in any of the appellants' contentions with respect to Cummins' indebtedness or with respect to the supposed obligation of Mrs. Fyten to pay $1,300.00 as a condition of having her title quieted as against the claims of the defendants.

In holding that there is no equity in the contentions with respect to Cummins' indebtedness, we have in mind principally the contention that on account of this indebtedness and the other breaches of the contract shown, the vendor did not have the right to cancel. We are also mindful that Cummins had recognized the correctness of the account involving all the items claimed prior to the year 1921. However, it appears in the findings and conclusions of the lower court and in the judgment rendered that, upon the payment of the amount of the indebtedness found, Cummins might have been relieved of his defaults under the contract. Hence, the indebtedness seems to have been regarded as the equivalent of performance. We are of the opinion that the record does not sustain this view. Moreover, we are impressed that such a conclusion is more favorable to the defendant Cummins than the record warrants. Since the judgment, however, quiets the title in the plaintiff against the claims of the defendants,—and we think properly so—any personal judgment against Cummins should reflect his indebtedness over and above any equity he might have had in the property. The judgment in the instant case does not so measure the personal liability of Cummins to the plaintiff. On the contrary, it is recited that the amount of the indebtedness found is equal to or in excess of the amount of Cummins' equity. Since by the judgment Cummins' equity is terminated and the plaintiff is restored to title and possession, free and clear of his claims, the value of any equity which he had must, of course, be credited on his personal liability. The evidence in the record does not establish definitely the damage sustained by the plaintiff as a result of the various breaches of contract by the defendant, nor does it fix with any degree of certainty the value of the equity of the defendant Cummins. Hence, it is im-

possible to determine what credit he should have upon his personal liability, and that part of the judgment which awards the plaintiff a recovery of $6,113.55 with interest must, therefore, be stricken. As so modified, the judgment is in all things affirmed.

CHRISTIANSON, Ch. J., and JOHNSON, BURKE, and NUESSLE, JJ., concur.