EBEN. H. NEIL, *in Equity, versus* JOHN S. TENNEY.

A. having become the assignee of a mortgage, and, by foreclosure thereof, the sole owner of the premises therein described, agreed, by contract under seal, to relinquish to B. all his title thereto, upon payment by B. of a certain sum. No actual consideration was paid for the agreement, and it was afterwards voluntarily surrendered to A. by B. for the reason that he was not able to pay the amount required by the contract. — *Held*, that, being under seal, the contract imported a sufficient consideration to uphold it.

Under this contract, the interest of B. was the same as if he had acquired a right to the conveyance by any other mode. He had an attachable interest in the premises, which might be seized and sold for the payment of his debts.

He might sell or assign his interest by virtue of the contract, before any attachment or seizure of it.

The question, whether such sale or assignment be fraudulent as against creditors, may, in certain cases, be tried and determined by a jury.

He might, also, make a gratuitous gift of his interest under the contract; but it would be void as against creditors.

Such contract might also be rescinded or cancelled by the parties thereto, before the rights of third persons have intervened.

The voluntary surrender of this contract by B. to A. was void as against creditors, B. being at the time insolvent; and C., by the seizure and sale of B.'s interest in the premises after such surrender, acquired a right to the conveyance from A.

A right, acquired in any legal mode, to the conveyance of real estate, though resting entirely in contract, is attachable property, and may be taken and sold on execution.

BILL IN EQUITY.

This bill in equity is accompanied by an agreed statement of facts, which are fully presented in the opinion of the Court.

*Abbott, Coburn & Wyman*, for plaintiff.

MAY, J. — This case, which is a bill in equity, is submitted to the Court upon an agreed statement of facts. From that statement it appears, that one Thomas C. Jones, on May 2d,

1840, by his deed of warranty, conveyed the farm in contro-versy to one Alfred Stackpole, and at the same time took back a mortgage of the same to secure certain promissory notes amounting to $1250, which the said Stackpole then gave in payment for said farm. The said Alfred Stackpole having paid a part of said notes, on Sept. 2, 1844, by his deed of warranty, conveyed one half of said farm to his father, James Stackpole, in severalty, and subject to the mortgage of said Jones. Subsequently, the condition of the mortgage having been broken, the said Jones took the necessary steps by an advertisement and record thereof, made in pursuance of the statute, to foreclose the same; and afterwards, before said foreclosure had become perfected, Alfred Stackpole, who had been in possession of the premises, with his father, from the date of Jones' deed to him, left said farm, having abandoned the intention of redeeming, and verbally, or otherwise, acquit-ted or released to his father all his rights in said farm. It further appears, that at some time the said James and Alfred Stackpole gave an absolute deed of said premises to one John W. Sawtelle, which the said Sawtelle took as security for about $100, being a claim which he held against the said James. This deed, whenever given, could have passed noth-ing except the rights which the grantors then held, viz., the same rights of redeeming the premises which the Stackpoles then had.

On the first day of January, 1855, just before the fore-closure became absolute, the defendant paid the said Jones the amount then due upon said mortgage, being about $850, and the said Jones indorsed the notes secured thereby, and then in existence, to him, without recourse, and at the same time assigned the mortgage to the defendant, in whose hands the same was afterwards foreclosed. Said assignment was made at the suggestion of said James Stackpole, long before expressed, but was without any consideration or agreement between him and the defendant. By these proceedings the defendant became the assignee of the mortgage and the sole owner of the whole estate. All parties before interested in

the right and equity of redemption, had negligently or in
tentionally suffered the said mortgage to become legally fore-
closed in the hands of the defendant, and thus had lost all
their equitable rights.   In this condition of things the defend-
ant, by contract, under his hand and seal, dated Jan. 6, 1855,
agreed with said James Stackpole, upon the payment by him,
within one year from that date, of the sum of eight hundred
fifty-six dollars and ninety-eight cents, with interest thereon,
to relinquish, by a quitclaim deed, all his claim and title to
said farm.   This contract was executed and delivered to said
James Stackpole, without any previous agreement, verbal or
written, and without any actual consideration; and, it is
agreed by the parties, that this fact is not to take away the
legal effect of the written contract, but the want of consider-
ation and the contract are both to be treated as the law re-
quires.

On the 28th of Nov. 1855, and before any seizure and sale
of said Stackpole's right under the contract, by which the
plaintiff claims title, and before any such attachment, the
said Stackpole, being then insolvent, voluntarily delivered to
the defendant the said contract, saying he should be unable to
pay the sum therein specified; and he surrendered the paper,
which was received by the defendant, no agreement or under-
standing having taken place before, at that time, or after-
wards, touching said surrender.

That James Stackpole had no attachable interest in the
estate, after the foreclosure of the mortgage was complete,
and before the giving of said contract, we think is perfectly
clear; and that said contract, *being under the hand and seal of
the defendant*, imports a sufficient consideration to uphold it, is
equally so.   The contract, by its terms, entitled the said
Stackpole to a deed of the premises, upon performance of the
specified condition which it contained.   The right to such a
conveyance, when legally acquired in any mode, though rest-
ing in contract, and relating to real estate, is made attacha-
ble property, and may be seized and sold in conformity to
law, for the payment of the debts of any person who is enti-

tled to a conveyance of such estate by virtue of any bond or contract. It may be attached on mesne process, R. S., c. 114, § 73; and by the Act of amendment, c. 1, § 10, it is further provided, that "all the right and title to a conveyance of real estate, by virtue of a bond or contract, which any debtor may have, may be taken and sold on execution, in the manner prescribed in the thirty-sixth and four following sections," of c. 94, in the Revised Statutes.

The agreed statement of facts, further shows, that the right of said James Stackpole, under said contract, for a deed of conveyance of said farm, was duly seized and sold on executions to the plaintiff, in conformity to law, on the 31st day of December, 1855, for the sum of $273,40; and that the creditors in said executions, were such, at the time of the afore-said surrender of said contract, and had been for a long time before. It becomes necessary, therefore, in order to decide what are the plaintiff's rights under said sale, to determine whether it was competent, in equity, for said Stackpole to surrender, without any consideration, the right which he had acquired under the contract of January 6th, 1855, to the prejudice of his existing creditors. That such surrender was made voluntarily, and without any solicitation or desire on the part of the defendant, and that the defendant accepted it, without any knowledge of any design on the part of said Stackpole to defraud his creditors, if any such design existed, the case fully shows. The question then arises, whether said surrender was effectual, so as to pass or extinguish the right of said Stackpole to a conveyance, as against his then existing creditors. The bill alleges that the premises were at that time of much greater value than the sum to be paid therefor, as mentioned in the condition of the contract, upon payment of which the conveyance was agreed to be made; and the amount paid by the plaintiff at the officer's sale, December 31, 1855, seems to indicate that there is truth in the allegation. Does the fact, that the right or property in this contract, was acquired by said Stackpole, without the payment of any consideration to the defendant therefor, other than what

Neil *v.* Tenney.

such a contract, under seal, legally imports, put said Stackpole in any different posture than he would be in, if he had acquired his right to such conveyance in any other mode ? We think not.

No legal or equitable reason is perceived, why such property, when once vested in the debtor, is not held, subject to the same principles, so far as relates to the rights of creditors, as any other property held by such debtor. Like one's interest in other contracts, it may be sold and assigned; and when such assignment is before the attachment on mesne process, the question, "whether such assignment be good and valid, or fraudulent and void, on legal principles," may, by the statute of 1847, c. 21, § 3, in certain cases, be tried and determined by a jury. Undoubtedly, such property may also be the subject of gift; but "gratuitous gifts," says Chief Justice WHITMAN, in the case of *Emery* v. *Vinal*, 26 Maine, 305, "in which no benefit was expected to accrue, or intended thereafter to be derived therefrom, by the grantor or donor, have, in numerous cases in the books, been adjudged void, when found to be interfering with the rights of creditors." Such contract, for a conveyance of real estate, may also be rescinded or cancelled by the parties thereto, *before* the rights of other persons have in some way attached; but we know of no equitable or just principle, by which the mere surrender of the contract to the obligor, after the debtor's rights in it have become fully vested, for the simple reason, that the holder regarded himself as unable to pay the sum therein specified, without any agreement or understanding having taken place, before, at the time, or afterwards, touching the surrender, can properly be regarded as having the effect to deprive the then existing creditors of such debtor of the right to attach such debtor's property therein, and to sell the same, if of value, in conformity to law, for the payment of their debts. Inasmuch, therefore, as the facts agreed in this case, show no such assignment, gift, or rescission of the contract, prior to the seizure and sale of the right of James Stackpole to a deed of conveyance under the same, as to render such sale inoperative

and void, we are brought to the conclusion, that such sale was lawful and valid, and transferred to the plaintiff all the right which passed to said Stackpole by virtue of said contract, when the same was executed and delivered to him; and it appearing that the plaintiff tendered to the defendant on January 15, 1856, $908,42, which is found to be sufficient in amount, if the same had been tendered on the sixth day of January preceding; and the defendant having, in writing, agreed that said tender, though not made in season, should, in the decision of this case, be regarded as made on said last mentioned day, no reason is perceived why the plaintiff is not entitled to a decree for a specific performance of said contract with him, upon the payment of said sum of $908,42, with interest thereon, as agreed, from the said sixth day of January, until the payment thereof. This bill, having been instituted in a friendly manner, to settle the rights of all parties interested, such decree is to be entered by the agreement of the parties, without costs.

TENNEY, C. J., did not sit.

RICE, APPLETON and CUTTING, J. J., concurred.