### FRED L. LYONS *vs.* MARGARET URGALONES.

Franklin. September 19, 1905. — November 27, 1905.

Present: KNOWLTON, C. J., LATHROP, HAMMOND, LORING, & BRALEY, JJ.

*Fraud*, As to creditors. *Attachment.* *Trust.* *Execution.*

The fact, that a married woman conveyed real estate to another because she was going to get rid of her husband, does not justify a finding that she intended to defraud her creditors generally.

A general attachment of all of a defendant's real estate in a certain county under R. L. c. 178, § 1, covers real estate held for the defendant on a trust express or implied under which he is entitled to a present conveyance, and no special attachment is necessary such as our statutes require in case of real estate which has been conveyed to a third person in fraud of creditors.

Evidence that a married woman conveyed real estate to another because she was going to get rid of her husband warrants a finding that the grantee holds the property on a trust whereby the grantor is entitled to a present conveyance within the meaning of R. L. c. 178, § 1, relating to real estate which may be taken on execution.

A purchaser at an execution sale of land, standing in the name of one holding it on a trust for the judgment debtor who is entitled to a present conveyance, and attached and sold on execution under R. L. c. 178, § 1, gets the legal title to the land and not merely an equitable title.

THE following statement of the case is taken from the opinion of the court:

This is a writ of entry to which the tenant pleaded *nul disseisin*. The presiding judge directed a verdict for the tenant on the ground that the demandant had mistaken his remedy, and if there was any remedy at all, it must be in a court of equity. The case is here on an exception to that ruling.

It appeared that the land in question originally belonged to a Mrs. Weatherhead, and that she gave a bond for a deed of it to Agnes Tutlis " about ten years ago," that is to say, about 1895. It also appeared that the purchase money to be paid under this bond for a deed was $1,800, and that Mrs. Weatherhead got $2,000 from certain insurance companies for a loss by fire which apparently occurred after Mrs. Tutlis had gone into possession under the bond. On February 17, 1901, Mrs. Weatherhead conveyed the property to one John B. O'Donnell, and on September 7, 1901, he conveyed it to the tenant. It further appeared that somewhere at the end of July Mrs. Tutlis employed the demandant to rebuild the house which had been burned, and that he began work in the early part of August, finishing it in the early part of September, or on the first day of October, as the tenant testified. On September 14, 1901, the tenant made a mortgage of the land to a savings bank in the sum of $1,000, $600 of which was paid to the demandant. What became of the other $400 did not appear.

The demandant testified that before the house was plastered, in the early part of September, he had a talk with Mrs. Tutlis and the tenant, and that at that time both of them told him that Mrs. Urgalones did not own the property; that it only stood in her name. Mrs. Tutlis said she had " deeded the property to these people because she was going to get rid of her husband," and that O'Donnell was not willing to sign a mortgage note, so that she had the property put in the name of Mrs. Urgalones, the tenant. Mrs. Weatherhead testified as a witness for the demandant, but she did not state what sum was paid to her as the purchase money, nor by whom it was paid. On July 12 of the following year (1902) the demandant brought an action of contract against Mrs. Tutlis to recover for the work of rebuilding the house. In this action he attached all the tenant's

real estate and put a special attachment on the lot here in question, being (in the words of the attachment) the same premises conveyed by O'Donnell to the tenant, "which deed is claimed to be fraudulent and void." Judgment was entered against Mrs. Tutlis in the sum of $668.39, on which an execution issued and under it a levy was made on "all the right which the within named Agnes Tutlis had on the 12th day of July, 1902, the day when the same was attached on mesne process, the following described real estate, to wit": the land here in question. The demandant became the purchaser at the execution sale and received a deed from the sheriff. The return day of the execution was November 4, 1903, and this writ of entry is dated November 5, 1903.

The tenant's story, among other things, was that she or her husband bought the property, (there was testimony to both,) that it was bought of Mrs. Tutlis and also of O'Donnell, (again there was testimony to both,) and that $500 had been paid to the one and the other; and the tenant testified that she employed Mrs. Tutlis to act for her (it appeared that she spoke broken English).

In rebuttal the demandant put in evidence that this $500 was lent by the tenant to Mrs. Tutlis, and that the tenant, who had been in occupation of a part of the house, paid rent therefor to Mrs. Tutlis as the owner of the house.

*B. H. Winn*, for the demandant.

*W. A. Davenport*, for the tenant.

LORING, J. [After the foregoing statement of the case.] We are of opinion that the demandant was not entitled to go to the jury on the ground that the conveyance of the tenant was a fraudulent conveyance as against the demandant who was a subsequent creditor. There was no evidence that Mrs. Tutlis was insolvent or in pecuniary difficulties at any time. The demandant, on cross-examination, testified that when the mortgage for $1,000 was made by the tenant, out of which he received $600, he "didn't think that Agnes Tutlis intended to defraud me, and I didn't think that the property was conveyed in intent to defraud me." It is under these circumstances that the statement must be interpreted that Mrs. Tutlis had the deeds made to O'Donnell and to the tenant because she was going to get rid of her hus-

band; and under these circumstances we do not think that a jury would be justified in finding that she intended to defraud her creditors generally. The only case relied on by the demandant in this connection is *Livermore* v. *Boutelle*, 11 Gray, 217. But in that case no question was made as to the conveyance being in fact fraudulent. The only question there was whether a wife, to whom alimony was due under a decree entered after the fraudulent conveyance was made, came within St. 13 Eliz. c. 5.

The demandant's second contention is that he duly attached and levied on the land in question as land held in the name of the tenant on an implied trust for Mrs. Tutlis, whereby she was entitled to a present conveyance within the last clause of R. L. c. 178, § 1.

By the terms of the levy, what was taken was what was attached, and the special attachment is in terms limited to a title in the tenant " claimed to be fraudulent and void." But in addition to the special attachment the demandant made a general attachment of all the tenant's real estate in Franklin County; and we are of opinion that where land standing in the name of a third person is attached as land held in trust for the debtor within R. L. c. 178, § 1, no special attachment is necessary.

It is anomalous that a special attachment should be necessary in case of land standing in the name of a third person which has been fraudulently conveyed, but that no special attachment should be necessary in case of land standing in the name of a third person under a trust express or implied for the debtor, whereby the debtor is entitled to a present conveyance. This would seem to have been an oversight, which came about in this way : In case of lands fraudulently conveyed, no special attachment was necessary until St. 1844, c. 107, although while standing in the name of a third person they could be attached and taken on execution as the lands of the debtor. It appears from a note of the commissioners for the Revised Statutes that before that time such lands could be attached and taken on execution although there was no express provision to that effect in the acts of the Commonwealth. See Report of Commissioners, c. 73, § 1, note. The explanation probably is that a statute to that effect had been passed by the Province. See Prov. St. 1696, c. 10, § 3; 1 Prov. Laws, (State ed.) 254. A provision covering lands fraud-

ulently conveyed was inserted by the commissioners in their report for the Revised Statutes, and became Rev. Sts. c. 73, § 1, and is now found in R. L. c. 178, § 1.

The provision for a special attachment was first enacted in St. 1844, c. 107, § 2. At that time no equitable interests in land could be taken on execution. *Russell* v. *Lewis*, 2 Pick. 508. The new statute, St. 1844, c. 107, § 2, unquestionably related to lands fraudulently conveyed only.

The right to take land held by another in trust for the debtor was inserted in the General Statutes by the Legislature after the commissioners had made a report which did not contain that or any similar provision. When the Legislature added the provision subjecting to execution lands standing in the name of a third person held in trust for the debtor, they left undisturbed the section reported by the commissioners which in terms and as matter of history applies only where lands have been fraudulently conveyed to and stand in the name of a third person. See Commissioners' Report for Gen. Sts. c. 103, § 1; c. 123, § 54. Also Gen. Sts. c. 103, § 1; c. 123, § 55.

Aside from the testimony put in by the demandant in rebuttal, (to the effect that the $500 paid by the tenant or her husband as the purchase money was in fact lent to Mrs. Tutlis,) the demandant had a case for the jury that this land was held in trust for her whereby she was entitled to a present conveyance within R. L. c. 178, § 1.

The demandant had proved that Mrs. Tutlis had gone into possession under a bond for a deed given by Mrs. Weatherhead, and there was evidence that the tenant had admitted that she did not own the property, that it only stood in her name, and that Mrs. Tutlis had it deeded first to O'Donnell and then to the tenant because she wanted to get rid of her husband. This warranted a finding that the whole purchase money had been paid by Mrs. Tutlis, in which case the tenant held the property for her on a trust whereby she was entitled to a present conveyance. The statement in *Snow* v. *Paine*, 114 Mass. 520, 525, that "The equitable interest of the debtor, if any, which arises from his part payment of the purchase money, cannot be reached by proceedings under the statute," was made with reference to that case where there was no trust because the sum paid was not

paid for an interest in the estate in common with the person who paid the rest of the purchase price, as is stated in *Bresnihan* v. *Sheehan*, 125 Mass. 11, 13. See also in this connection *Skehill* v. *Abbott*, 184 Mass. 145.

The presiding judge seems to have ruled that a purchaser gets an equitable title only when he buys at an execution sale of land standing in the name of a third person on a trust for the judgment debtor, whereby he (the judgment debtor) is entitled to a present conveyance. But in our opinion that is not so. When such an interest of the judgment debtor was first made subject to be taken on execution, the only way of levying an execution on it was by set-off. Gen. Sts. c. 103. The present provision for an execution sale originated in St. 1874, c. 188. The only provision for a levy by sale which existed before St. 1874, c. 188, was confined to levying on the equity of redeeming a mortgage, and originated in St. 1798, c. 77, § 3, re-enacted in Rev. Sts. c. 73, §§ 37, 38; Gen. Sts. c. 103, §§ 39, 40. See *Warren* v. *Childs*, 11 Mass. 222. So long as the interest in the land here in question could be levied on by set-off only there was, in our opinion, no escape from the conclusion that a legal not an equitable right was obtained. The subsequent act, St. 1874, c. 188, did not make a change in that. The same result was reached in case of lands fraudulently standing in the name of a third person. *Hunt* v. *Mann*, 132 Mass. 53. And in England this result is reached in case of the same equitable interest in land here under discussion, by force of the act which subjects it to be levied upon, to wit, the tenth section of the statute of frauds. 29 Car. II. c. 3. That act expressly provides that by force of the execution the lands taken shall be held and enjoyed free and discharged from all incumbrances of the third person or persons who shall be so seised or possessed in trust for the debtor. As was pointed out in *Russell* v. *Lewis*, 2 Pick. 508, 511, this section of the statute of frauds was not included in the Province statute of frauds, Prov. St. 1692–3, c. 15; 1 Prov. Laws, (State ed.) 46 ; but it is of some importance in construing our act. The same conclusion had been reached in New Hampshire, in case of a general statute which had been held to authorize a levy on land standing in the name of another in trust for the judgment debtor. *Pritchard* v. *Brown*, 4 N. H. 397.

It is to be noted that the clause of the section here in question is restricted to a trust " whereby he [the debtor] is entitled to a present conveyance." This means that to bring a case within R. L. c. 178, § 1, the creditor must prove that the debtor is absolutely entitled to an immediate conveyance without any action on his, the debtor's part. For this reason it was held that the debtor's right in land conveyed as security for a debt due from him, by an absolute deed, cannot be taken on execution but can be reached only by a bill to reach and apply under what is now R. L. c. 159, § 3, cl. 7. *Rawson* v. *Plaisted,* 151 Mass. 71.

It may be that in the case at bar the rule of *Rawson* v. *Plaisted,* 151 Mass. 71, would prevent the demandant from levying on this land if it appeared on all the evidence that the $500 referred to in the demandant's evidence in rebuttal was lent to pay for the land. It may be that on a bill being brought by Mrs. Tutlis for a conveyance the tenant could have set up in defence that she was not entitled to a decree until the $500 was paid, on the principle that he who seeks equity must do equity. However that may be, the jury were not bound to find that the $500 referred to in the demandant's evidence in rebuttal was connected with the purchase of the land in question, and if it was not, she certainly was entitled to a present conveyance if the jury found that Mrs. Tutlis paid the purchase money.

For these reasons we are of opinion that the jury would have been warranted in finding that the land in question was land conveyed to the tenant on an implied trust for Mrs. Tutlis, whereby she was entitled to a present conveyance within R. L. c. 178, § 1. If that was found, the demandant as the purchaser at the execution sale got by the sheriff's deed a legal title which supported his writ of entry; and the entry must be

*Exceptions sustained.*